UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Felicia Giordano**

          Case No. 19-cv-1231-PB
  v.         Opinion No. 2020 DNH 078

**Pub. Serv. Co. of N.H.
d/b/a Eversource Energy**


### MEMORANDUM AND ORDER

Felicia Giordano has sued her former employer, Public Service Company of New Hampshire d/b/a Eversource Energy ("PSNH" or "Defendant"), alleging age, sex, disability, and intersectional discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, et seq.; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.; and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq. Before me is PSNH's motion to dismiss Giordano's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 6). For the reasons that follow, I grant PSNH's motion.


### I.   STANDARD OF REVIEW

To withstand a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint must include factual allegations sufficient to "state a claim to relief that is plausible on its

face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Under this standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility demands "more than a sheer possibility that [the] defendant has acted unlawfully," or "facts that are merely consistent with [the] defendant's liability." Id. (internal quotation marks omitted). Although the complaint need not set forth detailed factual allegations, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.

In evaluating the pleadings, I excise any conclusory statements from the complaint and credit as true all non-conclusory factual allegations and reasonable inferences drawn from those allegations. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). I "may also consider 'facts subject to judicial notice, implications from documents incorporated into the complaint, and concessions in the complainant's response to the motion to dismiss.'" Breiding v. Eversource Energy, 939 F.3d 47, 49 (1st Cir. 2019) (quoting Arturet-Vélez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005)).

...

## II. BACKGROUND

**A. Factual Background**

Giordano was employed as a Senior Environmental Coordinator at PSNH's Schiller Station power plant until January 9, 2018 when the plant was sold to Granite Shore Power, LLC ("GSP"). Compl., Ex. 1 to Def.'s Notice of Removal, Doc. No. 1-1 at 8. Giordano was sixty years old when the plant was sold. Doc. No. 1-1 at 8. By that point, she had worked for PSNH for sixteen years. Doc. No. 1-1 at 8. The new owner chose not to keep her on when it acquired Schiller Station. Doc. No. 1-1 at 9.

The Schiller Station sale was part of a larger package that also included the company's Newington Station and Merrimack Station power plants. See Doc. No. 1-1 at 8–9. Giordano alleges that "[i]n the years leading up to the sale . . . there were steps taken by senior management to ensure all administrative environmental personnel who worked directly with generation stations would be able to keep their positions after the sale to GSP. . . ." Doc. No. 1-1 at 8. In Giordano's case, however, unspecified "tasks that were typically assigned to her that were specific to her position at Schiller Station were instead assigned to other, mostly younger workers, and her work duties were reduced." Doc. No. 1-1 at 8. The only example Giordano provides of such a task is that, in preparation for the sale, another environmental coordinator was assigned to tour Newington

3

and Schiller Stations with GSP's environmental representatives, but Giordano was not. Doc. No. 1-1 at 9. Giordano asserts that "[t]his was Defendant's way of not giving [her] face time with the potential new employer, which greatly reduced her chances of being hired by GSP." Doc. No. 1-1 at 9. Giordano also alleges that R. Despins, the Manager of Schiller Station, made "recommendations to GSP about which [e]nvironmental [c]oordinators to retain and which to terminate." Doc. No. 1-1 at 10. And he informed her in December 2017 that "you're out," suggesting that Despins had advance notice that she would not be hired by GSP. Doc. No. 1-1 at 11.

Giordano claims that Despins made comments about her age, such as by referring to her as "the oldest person in the room." Doc. No. 1-1 at 11. Despins also told Giordano, "I don't hear you crying to me that you are going to lose your house with the layoff," a comment Giordano attributes to her age "because she would be much more likely to have paid off her mortgage." Doc. No. 1-1 at 11.

Giordano does not have a disability, but she claims that Despins made statements suggesting that he regarded her as having a mobility-related disability. Doc. No. 1-1 at 10. For example, Giordano alleges that Despins offered to put up a handicapped parking sign next to the building if Giordano wanted to "go get a handicap [sic] sticker." Doc. No. 1-1 at 10.

4

Giordano also identifies two former PSNH employees that GSP hired to continue in their roles after the sale was completed: Tara Olson and G. Griffin. Olson was employed by PSNH as an environmental coordinator at Newington Station, which was located on the same street as Schiller Station. Doc. No. 1-1 at 8. Olson was fifty-eight years old and "believed to be without any perceived disability." Doc. No. 1-1 at 9. She was also the environmental coordinator assigned to tour Newington and Schiller Stations with GSP's environmental representatives. Doc. No. 1-1 at 9.

Griffin, a man in his thirties, was an independent contractor at Merrimack Station. Doc. No. 1-1 at 9. In the Spring of 2017, the employee in charge of air reporting at Merrimack Station retired and Griffin assumed those air reporting duties while continuing to work as an independent contractor. Doc. No. 1-1 at 9. Although Griffin did not hold an environmental coordinator position, Giordano alleges that she "could have done [the tasks assigned to Griffin] with little to no additional training." Doc. No. 1-1 at 9.

B.   **Procedural Background**

Giordano filed a Charge of Discrimination (the "Administrative Complaint") with the N.H. Commission on Human Rights in September 2018, alleging "termination" and "demotion in duties" due to age, sex, and perceived disabilities. Ex. A to

5

Def.'s Mem. of Law in Supp. of its Mot. to Dismiss ("Def.'s Mem."), Doc. No. 6-2 at 1-2. The Administrative Complaint was forwarded to the EEOC, which issued a Dismissal and Notice of Rights on August 7, 2019. Ex. B. to Def.'s Mem., Doc. No. 6-3 at 1. Giordano then brought suit in state court, alleging violations of the ADEA (Count I), Title VII (Count II), the ADA (Count III), and "Intersectional Discrimination" (Count IV). Doc. No. 1-1 at 12-14. PSNH removed the case to this court and subsequently filed the present motion to dismiss.

### III. ANALYSIS

PSNH attacks the sufficiency of Giordano's claims on numerous grounds.[1] For the following reasons, I agree that her complaint cannot survive PSNH's motion to dismiss.

---

[1] PSNH also raises the affirmative defense of failure to exhaust administrative remedies. Doc. No. 6-1 at 8-11. Specifically, PSNH argues that (1) Giordano's Charge makes no reference to any hostile work environment or harassment claims, and (2) Giordano's disparate treatment claims are beyond the scope of the acts alleged in her Charge of Discrimination. In responding to the first argument, Giordano asserts that she is not making a harassment claim. Pl.'s Obj. to Def.'s Mot. to Dismiss, Doc. No. 10-1 at 8. Accordingly, I need not determine whether she included a harassment claim in her Administrative Complaint. As to PSNH's second argument, because Giordano's pro se Charge plainly alleges sex, age, and disability discrimination in connection with PSNH's treatment of her surrounding the sale of Schiller Station to GSP, I conclude that she exhausted her administrative remedies with respect to her discrimination claims.

A.   **Adverse Employment Action**

Giordano's Title VII, ADEA and ADA claims fail primarily because she has not sufficiently alleged that she suffered an adverse employment action. To bring a successful discrimination claim under each of the statutes Giordano cites – the ADEA, Title VII, and the ADA — a plaintiff must have suffered an adverse employment action. See Collazo v. Nicholson, 535 F.3d 41, 44 (1st Cir. 2008) (ADEA); Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003) (Title VII); Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 82 (1st Cir. 2008) (ADA).[2] Because of the vague and generalized nature of Giordano's complaint, it is not at all clear what type of adverse employment action she is alleging. I analyze four possibilities derived from a generous reading of her pleadings and ultimately conclude that she has not sufficiently alleged facts supporting any.

1.   Termination

Giordano makes passing reference to her "termination" in her complaint. See, e.g., Doc. No. 1-1 at 12–13. Termination (or "discharge") is an adverse employment action and is specifically enumerated in each of the three relevant anti-discrimination

---

[2] As I explain in greater detail below, Giordano does not assert a statutory basis for her intersectional discrimination claim. Because that claim fails for other reasons, I need not determine whether a complaint for intersectional discrimination must allege an adverse employment action.

7

statutes. See 29 U.S.C. § 623(a)(1) (ADEA); 42 U.S.C. §2000e-2(a)(1) (Title VII); 42 U.S.C. § 12112(a) (ADA). Giordano, however, has not pled facts suggesting that a discriminatory termination occurred.

It is clear from Giordano's complaint that her employment with PSNH ended with the sale of Schiller Station. Doc. No. 1-1 at 8. Giordano's only two comparators — Olson and Griffin — also ceased to be employed by PSNH when their respective stations were sold. See Doc. No. 1-1 at 9. In fact, Giordano has not alleged that PSNH retained any employees from the Schiller, Newington, or Merrimack Stations, let alone that it made termination decisions based upon its employees' protected characteristics. In short, the current complaint does not identify any facts that would support a plausible claim that PSNH's decision to terminate Giordano was based in whole or in part on an improper motivation.[3]

---

[3] In demonstrating this element of causation, a Title VII plaintiff "may establish an 'unlawful employment practice' by demonstrating that sex 'was a motivating factor for any employment practice, even though other factors also motivated the practice.'" Burns v. Johnson, 829 F.3d 1, 9 n.9 (1st Cir. 2016) (quoting 42 U.S.C. § 2000e-2(m)). Under the ADEA, however, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). The most recent First Circuit decision to articulate the ADA's causation standard has stated in dictum that the plaintiff must demonstrate that the employer took the adverse employment action "in whole or in part because of [her] disability." Flaherty v. Entergy Nuclear Operations, Inc., 946 F.3d 41, 53 (1st Cir.

2. <u>Failure to Transfer</u>

Giordano also nominally alleges a "failure to transfer" claim. "[T]here is no doubt that in an appropriate case the denial of a request for a transfer may be sufficiently harmful to amount to an adverse employment action . . . ." <u>Gorski v. N.H. Dep't of Corr.</u>, 290 F.3d 466, 475 (1st Cir. 2002). The First Circuit Court of Appeals, however, has previously declined to accept a plaintiff's argument that a failure to transfer amounts to an adverse employment action where the plaintiff "never actually applied for a transfer, so there was not even an occasion for a denial." <u>Id.</u>

Giordano has not alleged that she ever sought a transfer to another position or that her request was denied. The closest Giordano comes to alleging facts in support of a failure to transfer claim is her allegation that PSNH hired Griffin to perform duties that Giordano "could have done with little to no additional training." Doc. No. 1-1 at 9. Griffin performed these duties, however, at a different location from Giordano and he did not fill an "environmental coordinator" position. Furthermore, by Giordano's own allegations, Griffin was an

---

2019) (emphasis added); <u>but cf.</u> <u>Murray v. Mayo Clinic</u>, 934 F.3d 1101, 1107 (9th Cir 2019) (collecting cases concluding that the "but-for" causation standard required by <u>Gross</u> in ADEA claims also applies to ADA claims).

independent contractor whose position was "temporary." Doc. No. 1-1 at 9. Giordano has identified no authority suggesting that an employer may be liable for failure to transfer an employee to a lesser, temporary role at a different location, especially where plaintiff never sought the transfer in question. Accordingly, she has failed to properly allege a failure to transfer claim.

3.  Failure to Recommend

Giordano similarly fails to muster factual support for a "failure to recommend" claim. Refusing to provide a recommendation can, in some circumstances, be considered an adverse action, at least with respect to retaliation claims. See, e.g., Ray v. Ropes & Gray, LLP, 961 F. Supp. 2d 344, 358–59 (D. Mass. 2013) (citing EEOC Compliance Manual § 8-II(D)(2)) (recognizing a failure to recommend as an adverse employment action in Title VII retaliation case); but cf. Morales-Vallellanes v. Potter, 605 F.3d 27, 36 (1st Cir. 2010) (noting that adverse employment action requirement does not apply to retaliation claims in the same way that it applies to discrimination claims). Giordano has, however, pleaded insufficient facts to support such a claim, even if I assume for purposes of analysis that it could be viable in theory.

The only fact that Giordano alleges in support of this possible claim is that Despins and the "other station managers

and management[] made the recommendations to GSP regarding which [e]nvironmental [c]oordinators to retain and which to terminate." Doc. No. 1-1 at 10. She does not allege that she ever requested a recommendation, that PSNH did not recommend her, or that it provided a bad recommendation. She also does not allege that PSNH recommended other employees or that any such recommendations were unwarranted. Giordano has, therefore, failed to allege facts supporting her claim that a discriminatory failure to recommend occurred.

    4.   <u>Demotion</u>

Finally, Giordano contends that she has alleged facts constituting what she calls a "demotion in duties" but that I will refer to as reassignment of tasks. In some circumstances, a reassignment of tasks can constitute an adverse employment action even though it is not an actual demotion. See, e.g., Gu v. Bos. Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002) ("Certainly, if an employee suddenly finds herself with dramatically decreased supervisory authority and without a voice in major decisions, this could constitute an adverse employment action.") "To be adverse, [however,] an action must materially change the conditions of plaintiff['s] employ." Id. (citing Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996)). "Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not

11

elevate that act or omission to the level of a materially adverse employment action." Blackie, 75 F.3d at 725.

Giordano has only vaguely asserted that unspecified "tasks that were typically assigned to her that were specific to her position at Schiller Station were instead assigned to other, mostly younger workers, and her work duties were reduced." Doc No. 1-1 at 8. Her complaint references only one specific instance in which this occurred: when "instead of tasking Ms. Giordano to tour both Newington Station and Schiller Station with the GSP environmental representatives prior to Defendant's sale to GSP, Defendant assigned Olson to do so." Doc. No. 1-1 at 9. Beyond this one instance, Giordano's complaint provides no explanation of what the reassigned tasks were.[4] This complete lack of specificity makes it impossible to determine if the alleged reassignment of Giordano's tasks could plausibly qualify as an adverse employment action. See Gu, 312 F.3d at 14.

Giordano has, therefore, failed to plead facts supporting her conclusory assertion that PSNH subjected her to an adverse

---

[4] Where relevant facts necessary to support a claim are in the hands of the defendant, the court may, sua sponte, order limited discovery. See, e.g., 25 CP, LLC v. Firstenberg Mach. Co., No. 09-cv-80-PB, 2009 WL 4884483, at *10 n.14 (D.N.H. Dec. 8, 2009). Here, however, this would be inappropriate because Giordano has first-hand knowledge as to which of her tasks were assigned to other workers.

employment action. For this reason alone, her ADEA (Count I), Title VII (Count II), and ADA (Count III) claims fail.

**B.   Discriminatory Motive**

Giordano's Title VII claim also suffers from another deficiency. To survive a motion to dismiss, a plaintiff bringing a suit for discrimination under the ADEA, Title VII, and the ADA must plead facts supporting the conclusion that the employer acted with a discriminatory motive. See Collazo, 535 F.3d at 44 (1st Cir. 2008) (ADEA); Benoit, 331 F.3d at 173 (Title VII); Ruiz Rivera, 521 at 82 (ADA). While Giordano's complaint alleges facts minimally sufficient to suggest that her employer's actions were motivated by her age or perceived disability, it is completely devoid of facts suggesting a sex-based motive.

Giordano compares her treatment to that of only two other employees: one man and one woman. The man, Griffins, held a temporary independent contractor position at a different station. Doc. No. 1-1 at 9. He was not an environmental coordinator, and Giordano never alleges that she sought Griffins's position — only that she "could have done" the tasks assigned to him. Doc. No. 1-1 at 9. The woman, Olson, held an environmental coordinator position at another power station and retained that position upon the sale of her station to GSP. Doc. No. 1-1 at 8–9. Giordano never alleges that anyone ever even commented on her sex, let alone commented negatively. There are

13

no allegations of disparaging remarks aimed at other women or of negative treatment of other women. These facts, without more, do not give rise to an inference that Giordano's sex had any causal connection to PSNH's actions.[5] Accordingly, Giordano's Title VII claim (Count II) is dismissed.

C.    **Intersectional Discrimination Claims**

Count IV of Giordano's complaint alleges discrimination "on the basis of the intersection of sex, age, and perceived disability." Doc. No. 1-1 at 8. Her complaint does not, however, identify any statutory basis for this intersectional discrimination claim. In her objection, Giordano cites cases in which plaintiffs have successfully brought employment discrimination suits alleging discrimination based on a combination of multiple characteristics. See Doc. No. 10-1 at 15-17. She fails, however, to identify any case in which a court has recognized an intersectional discrimination claim that was not rooted in an anti-discrimination statute. Cf., e.g.,

---

[5] Giordano's complaint also alleges that "Giordano was the only female in Defendant's group of Environmental Coordinators terminated by Defendant upon the sale of its previously aforementioned stations to GSP." Doc. No. 1-1 at 11. This statement is factually inconsistent with the rest of Giordano's complaint, which makes clear that Olson was also terminated by PSNH when it sold Newington Station to GSP. More fundamentally, however, Giordano offers no explanation for how this fact would support a conclusion that PSNH discriminated against her as a woman. Accordingly, I do not consider it in my analysis.

Fratturo v. Gartner, Inc., No. 3:11cv113 (JBA), 2013 WL 160375, at *6-8 (D. Conn. Jan. 15, 2013) (rejecting defendant's motion for summary judgment on plaintiff's age-plus-disability claim brought under the ADEA); Arnett v. Aspin, 846 F. Supp. 1234, 1241 (E.D. Penn. 1994) (recognizing sex-plus-age claim under Title VII). I, therefore, conclude that Giordano has not identified adequate legal support for her "intersectional discrimination" claim and dismiss Count IV.

## IV. CONCLUSION

For the reasons set forth above, I grant Defendant's motion to dismiss. If Giordano should seek permission to amend her complaint in an effort to correct the pleading deficiencies I have identified, she must specify the adverse employment actions on which her claims are based and identify sufficient supporting facts to permit a conclusion that she has a plausible claim for each identified adverse action. She also should not assert a claim for sex discrimination unless she can allege a plausible claim that she was a victim of sex discrimination and she should not assert a claim for intersectional discrimination unless she is able to ground her claim in an antidiscrimination statute.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

May 12, 2020

cc:     Leslie H. Johnson, Esq.
        William D. Pandolph, Esq.